IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**THE ESTATE OF ANDREW TYLER**                                                       **PLAINTIFF**
**PENNINGTON, Deceased**

**V.**                                                                                    **NO. 1:16-CV-110-DMB-DAS**

**SOUTHERN MOTION, INC.**                                                            **DEFENDANT**

## ORDER

Before the Court is "Defendant Southern Motion, Inc.'s Motion for Judgment on the Pleadings." Doc. #15.

### I
### Rule 12(c) Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion—that is, the court must determine upon a review of the pleadings whether the plaintiff has stated a valid claim for relief. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Under this inquiry, to survive dismissal,

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or

elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quotation marks omitted).

## II
## Relevant Factual Allegations and Procedural History

On January 19, 2015, Andrew Tyler Pennington began working for Southern Motion, Inc. as a frame builder. Doc. #1 at ¶ 4. Shortly before his employment with Southern Motion began, Pennington learned that his wife was pregnant. *Id*. at ¶ 5. The pregnancy was considered high-risk. *Id*. On or about March 30, 2015, Pennington took a day off from work to accompany his wife to a "pregnancy-related appointment." *Id*. at ¶ 6. Upon Pennington's "attempted return to work," Southern Motion terminated Pennington's employment. *Id*. at ¶ 7. Pennington committed suicide shortly after the termination. *Id.* at ¶ 9.

On June 23, 2016, Pennington's estate ("Estate") filed a complaint against Southern Motion alleging "discrimination based on sex and pregnancy" in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act. Doc. #1. The Estate alleges that Southern Motion terminated Pennington's employment because of his gender and his wife's pregnancy. *Id*. at ¶¶ 7–8. On November 9, 2016, Southern Motion filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Doc. #15. On November 22, 2016, the Estate responded in opposition and, on December 6, 2016, Southern Motion filed a reply. Doc. #18; Doc. #22.

## III
## Discussion

In its motion for judgment on the pleadings, Southern Motion argues that the Estate's claims should be dismissed "because as a matter of law, a male plaintiff cannot bring a discrimination claim under Title VII, as amended by the Pregnancy Discrimination Act, based

2

solely on his wife's pregnancy," and because the Estate fails to state a claim for sex discrimination. Doc. #15 at 1. In response, the Estate argues that "discrimination against a male employee because of the pregnancy of his spouse is sex discrimination. Pennington was therefore discriminated against based on his sex when he was terminated because of his wife's pregnancy." Doc. #18 at 1. In its reply, Southern Motion argues that "Title VII, as amended by the PDA, ... simply does not provide a claim based on the pregnancy of an employee's spouse in the absence of proof that the employee was discriminated against because of his or her sex." Doc. #22 at 1.

### A. Title VII Background

Title VII of the Civil Rights Act of 1964, in relevant part, provides:

> It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

In 1976, the United States Supreme Court held that Title VII did not extend to discrimination on the basis of pregnancy. *Gilbert v. Gen. Elec. Co.*, 429 U.S. 125, 145–46 (1976). In response, Congress enacted the Pregnancy Discrimination Act in 1978, which added new language to the definitions subsection of Title VII of the Civil Rights Act of 1964. *Young v. United Parcel Serv., Inc.*, 135 S.Ct. 1338, 1344 (2015). The updated Title VII provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

### B. Claims Based on Wife's Pregnancy under Title VII

There is little to no authority on the precise issue of whether a male can bring a claim of

discrimination under Title VII, as amended by the Pregnancy Discrimination Act, based solely on his wife's pregnancy. The two courts that have addressed similar issues have relied on *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669 (1983), for guidance.

### 1. *Newport News*

In *Newport News*, an employer's health insurance plan provided its female employees with hospitalization benefits for pregnancy-related conditions to the same extent as for other medical conditions but provided less extensive pregnancy benefits for spouses of male employees. 462 U.S. at 671–73. The Equal Employment Opportunity Commission filed an action against the employer alleging discrimination on the basis of sex against male employees. *Id*. at 674. The district court dismissed the EEOC's action and a divided panel of the Fourth Circuit reversed. *Id*. at 674–75. The employer appealed. *Id*.

The Supreme Court held that the employer's "plan is unlawful ... because the protection it affords to married male employees is less comprehensive than the protection it affords to married female employees." *Id*. at 676. The Supreme Court went on to state:

> There is no merit to petitioner's argument that the prohibitions of Title VII do not extend to discrimination against pregnant spouses because the statute applies only to discrimination in employment. … The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex. And since the sex of the spouse is always the opposite of the sex of the employee, it follows inexorably that discrimination against female spouses in the provision of fringe benefits is also discrimination against male employees.

*Id*. at 684.

### 2. *Nicol v. Imagematrix, Inc.*

In *Nicol v. Imagematrix, Inc.*, a married couple brought a suit against their common employer alleging they were discharged due to discrimination based on the wife's pregnancy. 773 F. Supp. 802, 803 (E.D. Va. 1991). The husband argued that "he was discriminated against

on the basis of his sex due to his wife's pregnancy." *Id*. at 804. Specifically, the husband contended that the "defendants terminated him for a reason that a female employee could never be terminated. A woman could never be terminated due to her employer's animus against a pregnant spouse because her spouse could not be pregnant." *Id.* The employer moved for summary judgment on the ground that the husband lacked standing to sue under Title VII. *Id*. at 803.

The *Nicol* court held that "even though Mr. Nicol is not a pregnant employee, he has standing to sue under Title VII because he was allegedly discharged and discriminated against on the basis of his own sex."[1] *Id*. at 804–05. In reaching its conclusion, the court reasoned that "Title VII, by its terms confers standing to sue on persons who claim they were discharged because of their gender." *Id*. at 804. The district court went on to state that, "[t]hough not directly on point, *Newport News* squarely supports the result reached here." *Id*. at 805. Additionally, the court noted that Nicol's claim was "analogous to claims of discrimination based on interracial relationships and courts have consistently and sensibly recognized that discrimination on the basis of interracial marriage or association and discrimination on the basis of race are one and the same." *Id*.

### 3. *Griffin v. Sisters of Saint Francis, Inc.*

In a more recent case, *Griffin v. Sisters of Saint Francis, Inc.*, the Seventh Circuit addressed "whether a male plaintiff can state an employment discrimination claim based on an adverse employment action allegedly taken because of a partner's pregnancy." 489 F.3d 838, 842 (7th Cir. 2007). In *Griffin*, Charles Griffin and Julia Yarden, who were in a relationship,

---

[1] Although the opinion referred to standing generally, its analysis centered on whether Title VII authorized the husband to sue. 773 F.Supp. at 803–04. Accordingly, the issue was one of statutory standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 & n.4 (2014) (defining statutory standing as question of "whether [plaintiff] has cause of action under the statute").

5

worked together on a farm owned and run by the Sisters of Saint Francis. Shortly after Yarden became pregnant by Griffin, they were both fired. Griffin and Yarden subsequently filed suit against Sisters under the Pregnancy Discrimination Act. Sisters moved for summary judgment, arguing that Griffin's claim failed because he was not protected by the PDA. Though the district court ultimately ruled against Griffin and Yarden on Sister's summary judgment motion,[2] it assumed for purposes of its decision that Griffin could assert a claim as someone who was treated differently "because of pregnancy." *Id.* at 842.

On appeal, Sisters reasserted its argument that Griffin's claim failed as a matter of law. *Id*. The Seventh Circuit, after considering the language of Title VII, as amended by the Pregnancy Discrimination Act, rejected the plaintiffs' argument "that the PDA prohibits employers from taking 'any negative employment action based on reproductive rights' and protects females and males equally." *Id*. at 843. Rather, it held that "male plaintiffs, like their female counterparts, must prove that they suffered adverse employment actions because of their sex," citing as an example of such discrimination, the unlawful benefits plan at issue in *Newport News*. *Id*. at 842–43. Based on this conclusion, the court held that Griffin's claim failed because he did not "assert that he was fired because of his sex." *Id*.

### 4. State of the Law

As already mentioned, Title VII, as amended, prohibits employers from discriminating against employees because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act provides, in pertinent part, that "[t]he terms 'because of sex' or 'on the basis of sex' include but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Further, the

---

[2] The district court ultimately found that Griffin and Yarden could not make out a prima facie case of discrimination on the basis of pregnancy, nor could they show that Sister's proffered reasons for its actions were pretextual. *Griffin v. Sisters of St. Francis*, No. 1:02-cv-329, 2006 WL 2135793, at *10 (S.D. Ind. July 28, 2006).

6

consensus of *Nicol* and *Griffin*, the only two cases to squarely address the issue, is that in order for a male to properly bring a claim of discrimination based on pregnancy, the male must allege that he was discriminated against because of his sex. This Court concurs with such consensus. Accordingly, the question becomes whether the Estate has properly alleged a sex discrimination claim.

### C. Sex Discrimination Allegations

A claim brought under the Pregnancy Discrimination Act is analyzed like any other Title VII discrimination claim. *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 812–13 (5th Cir. 1996). "The familiar *McDonnell Douglas* standard for evaluating employment discrimination is an evidentiary framework, not a pleading standard." *Haskett v. Cont'l Land Res., L.L.C.*, 668 F. App'x 133, 134 (5th Cir. 2016) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). Accordingly, a "plaintiff … need not allege the prima facie case of that evidentiary framework" to state a claim. *Id*. However, "[a]llegations related to that prima facie inquiry may nonetheless be helpful in satisfying the general [pleading] standard." *Id*.

Under the *McDonnell Douglas* framework, in order to establish a prima facie case of discrimination, the plaintiff must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

Here, the Estate does not allege that Pennington was treated less favorably than female employees.[3] Instead, the Estate alleges Pennington was "treated less favorably than *male*

---

[3] The Estate relies heavily on *Newport News* and *Nicol*. The Court notes that in both cases, the male plaintiffs allege they were treated differently than female employees, not male employees without pregnant wives or partners.

7

*employees* whose wives were not pregnant." Doc. #1 at ¶ 14 (emphasis added). In arguing that this allegation is sufficient to state a claim, the Estate cites a line of Title VII interracial marriage cases. Doc. #19 at 8–9. In its reply, Southern Motion argues that the Estate's reliance on "so called associational discrimination" claims is misplaced. Doc. #22 at 1, 4–5.

Title VII "prohibit[s] discrimination against an employee on the basis of a personal relationship between the employee and a person of a different race." *Floyd v. Amite Cty. Sch. Dist.*, 581 F.3d 244, 249 (5th Cir. 2009). This prohibition, which is "predicated on animus against the employee because of his association with persons of another race," requires that the animus be "directed [at the employee] on the basis of *his* race." *Id*. at 250–51 (emphasis added). Accordingly, a former white employee at a car dealership may claim race discrimination because of his relationship with his bi-racial child because:

> [i]f he had been African–American, presumably the dealership would not have discriminated because his daughter would also have been African–American. Or, if his daughter had been Caucasian, the dealership would not have discriminated because [the father] himself is Caucasian. So the essence of the alleged discrimination in the present case is the contrast in races between [the father] and his daughter. This means that the dealership has been charged with reacting adversely to [the father] because of [his] race in relation to the race of his daughter. The net effect is that the dealership has allegedly discriminated against [the father] because of his race.

*Id*. (quoting *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 994–95 (6th Cir. 1999)). However, a former African American track coach could not state a claim based on his relationship with his white athletes when "the evidence reflect[ed] that the racial animus was directed solely towards the white students" and it was undisputed that the coach would have been fired whether he was white or black. *Id*. at 250–51.

Because an associational discrimination claim depends on an unlawful discriminatory animus *arising* from a relationship, the Estate's argument that "to fire an employee because of

the pregnancy status of the employee's spouse is sex discrimination" is without merit. The discrimination would have to, in this case, be based on Pennington's association with his pregnant spouse *and* must have been based on Pennington's sex. Put differently, the Estate must allege not only that Pennington was terminated because of his partner's pregnancy but that a female employee *would not* have been terminated because of her partner's pregnancy. No such allegations have been made here. Accordingly, construing the complaint in the Estate's favor, the Court finds the Estate has failed to assert sufficient facts to plausibly suggest that Pennington was treated less favorably than those outside his protected class. The Estate's claim of sex discrimination, therefore, fails as a matter of law.

## IV
## Leave to Amend

When a court dismisses a complaint based on pleading deficiencies, it is generally appropriate to provide the plaintiff an opportunity to remedy the pleading deficiencies through the filing of an amended complaint. *Moore v. Miss. Gaming Comm'n*, No. 1:15-CV-00013, 2015 WL 13019615, at *6 (N.D. Miss. Nov. 2, 2015) (citations omitted); *Nelson v. U.S. Bank, Nat'l Ass'n*, No. 4:13-cv-01584, 2014 WL 12599398, at *3 (S.D. Tex. Aug. 6, 2014). The Court concludes that such relief is warranted here. The Estate will be given an opportunity to correct the pleading deficiencies identified in this order such that dismissal will be without prejudice to the filing of an amended complaint.

## V
## Conclusion

For the reasons above, Southern Motion's motion for judgment on the pleadings [15] is **GRANTED**. The Estate's sex discrimination[4] claim is dismissed without prejudice to the filing

---

[4] The Estate alleges "discrimination based on sex *and* pregnancy." Because a pregnancy discrimination claim is technically a sex discrimination claim, it follows inextricably that the Estate's pregnancy discrimination claim is

9

of an amended complaint within twenty-one (21) days of this order.

**SO ORDERED**, this 6th day of September, 2017.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

also dismissed. The Estate acknowledges that the two claims are the same when it argues that "discrimination against a male employee because of pregnancy of his spouse is sex discrimination."

10